UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **POULA YACOUB,** *et al.*, <br><br>　　　　　Plaintiffs, <br><br>　v. <br><br>**ANTONY J. BLINKEN**, *in his official capacity as United States Secretary of State, et al.*, <br><br>　　　　　Defendants. | Civil Action No. 21-cv-983 (TSC) |

## MEMORANDUM OPINION

Plaintiffs are nineteen United States citizens who are seeking K-1 immigration visas for their fiancées and fiancés. They allege that Defendants—U.S. Secretary of State Antony Blinken and the Department of State (the "Department")—violated the Administrative Procedure Act by failing to adjudicate their visa applications within a reasonable time and suspending the issuance of visas during the COVID-19 pandemic in a manner that was arbitrary and capricious, Compl. ¶¶ 51–58; *id.*, Claims for Relief ¶¶ 1–9, 17, and they seek a writ of mandamus to compel Defendants to adjudicate their visa applications, *id.* ¶¶ 20–24. Defendants have moved to dismiss Plaintiffs' lawsuit, ECF No. 5, Defs. Mot., and for reasons explained below, the court will GRANT Defendants' motion.

### I.　　BACKGROUND

**A. K-1 Visas**

The K-1 nonimmigrant visa, commonly known as a "fiancé(e) visa," is for the foreign-citizen fiancé(e) of a U.S. citizen. Compl. ¶ 29 (citing Nonimmigrant Visa for Fiancé(e) (K-1), U.S. Department of State, available at https://travel.state.gov/content/travel/en/us-

visas/immigrate/family-immigration/nonimmigrantvisa-for-a-fiance-k-1.html#1 (last accessed Sept. 29, 2022) [hereinafter *DOS Nonimmigrant Visa Information*]).  The recipient of a K-1 visa may travel to the U.S. to marry his or her U.S. citizen sponsor within 90 days of arrival and apply for lawful permanent resident status after the marriage.  *Id.* (citing *DOS Nonimmigrant Visa Information*).

To be eligible to apply for a K-1 visa, the petitioning U.S. citizen fiancé(e) must submit a Form I-129F, Petition for Alien Fiancé(e), to U.S. Citizenship and Immigration Services ("USCIS").  *Id.* ¶ 30 (citing *DOS Nonimmigrant Visa Information*).  If USCIS approves the Form I-129F, it forwards the approved form to the State Department's National Visa Center ("NVC"). *Id.* (citing *DOS Nonimmigrant Visa Information*).  NVC is tasked with notifying the appropriate U.S. Embassy or consular office of the approved Form I-129F, and the consular office in turn sends the foreign-citizen fiancé(e) instructions on how to apply for the visa.  *Id.* (citing *DOS Nonimmigrant Visa Information*).

B. **Regional Proclamations**

In response to the COVID-19 pandemic, President Trump issued five "Regional Proclamations" suspending entry of immigrants under 8 U.S.C. § 1182(f) of the Immigration and Nationality Act ("INA"), which authorizes the President to "suspend the entry" of all or any class of immigrants or nonimmigrants when the President "finds that the entry . . . would be detrimental to the interests of the United States."  *Id.*  These proclamations restricted entry for persons who, within fourteen days of seeking entry, were physically present within areas with high risk of transmitting COVID-19.  Proclamation No. 9984, 85 Fed. Reg. 6,709 (Feb. 5, 2020) (Republic of China); Proclamation No. 9992, 85 Fed. Reg. 12,855 (Mar. 4, 2020) (Iran); Proclamation No. 9993, 85 Fed. Reg. 15,045 (Mar. 16, 2020) (Schengen Area); Proclamation

No. 9996, 85 Fed. Reg. 15,341 (Mar. 18, 2020) (United Kingdom and Ireland); Proclamation No. 10041, 85 Fed. Reg. 31,933 (May 28, 2020) (Brazil).

Soon after taking office, President Biden issued a proclamation extending the suspension on entry of immigrants and nonimmigrants from the Schengen Area, the United Kingdom, Republic of Ireland, and Brazil, and expanded restrictions to include certain travelers from South Africa. Proclamation No. 10143, 86 Fed. Reg. 7467 (Jan. 25, 2021). On April 30, 2021, President Biden further expanded the restrictions to encompass nonimmigrant travelers from India. Proclamation No. 10199, 86 Fed. Reg. 24,297 (May 6, 2021).

Each of these Regional Proclamations contained an exception for persons whose entry the Secretary of State deems to be "in the national interest." *See*, *e.g.*, Proclamation No. 9984. Beginning on March 20, 2020, the State Department interpreted the Regional Proclamations to suspend not only "entry" of immigrants, but also the issuance of visas, unless an applicant (1) was eligible for an exception to the Regional Proclamations (such as the national interest exception ("NIE")), and (2) qualified for mission critical or emergency designations under the State Department's guidance. *See* Suspension of Routine Visa Services, U.S. Department of State, available at https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/visas-news-archive/suspension-of-routine-visa-services.html#:~:text=In%20response%20to%20significant%20worldwide,phased%20resumption%20of%20visa%20services (last accessed Sept. 29, 2022).

C. **The COVID-19 Pandemic and Visa Processing**

In addition to the Regional Proclamation restrictions on certain persons "entering" the U.S., in March 2020, in light of the COVID pandemic, the State Department suspended routine visa services at all U.S. Embassies and Consulates. *See* Compl. ¶ 39; Compl., Ex. B (20 STATE

30920 (Mar. 20, 2020)) ¶¶ 1–2.  In July 2020, the Department issued guidance directing embassies and consular offices to "enter a phased resumption of visa services," to continue providing "emergency and 'mission-critical' visa services" as "resources allow," and to "resume routine visa services as local conditions and resources allow."  Defs. Mot. at 4 (citing Suspension of Routine Visa Services); *see also* Compl. ¶ 42.  Under Phase One of the "phased resumption," posts were directed to prioritize "emergency and mission critical" visas.  Compl., Ex. D, 20 STATE 65080 (Jul. 8, 2020) at 1–2.  Posts in Phase Two were directed to prioritize immediate relative cases and begin planning—two months in advance—for the resumption of routine immigration visa processing.  *Id.* at 3.  In Phase Three, posts could resume processing all immigrant visas, as well as K-1 visas.  *Id.* at 3–4.  The Department also advised that "[p]osts that issue both immigrant visas (IV) and nonimmigrant visas (NIV) will need to consider a balance between them."  *Id.* at 2.

Soon thereafter, in August 2020, the Department issued notice to K visa applicants that "as it becomes safe to resume more consular operations . . . posts are authorized to give K visa cases high priority."  *See* Compl. ¶ 42; Ex. E, *Important Notice for K Visa Applications Affected by Covid-19*, U.S. Dep't of State, available at https://travel.state.gov/content/travel/en/News/visas-news/important-notice-for-K-visa-applicants-affected-by-covid-19.html (last updated Aug. 31, 2020).  And in March 2021 the Department stated in a public briefing that K visa applicants should be given the highest priority for visa processing.  *Briefing with Consular Affairs Acting Deputy Assistant Secretary for Visa Services Julie M. Stufft on the Current Status of Immigrant Visa Processing at Embassies and Consulates*, U.S. Dep't of State (Mar. 1, 2021), available at https://go.usa.gov/x6XK3 (last visited April 18, 2022).  The Consular Affairs Acting Deputy Assistant Secretary for Visa

Services stated that immigrant visas, including fiancé(e) visas, "will be the first adjudicated" "at every post" even though the capacity to process visas had significantly decreased. *Id.*

### D. Plaintiffs' Complaint and Defendants' Motion to Dismiss

Each of the nineteen Plaintiffs has submitted an I-129F petition that USCIS has approved, *id.* ¶ 37, but Plaintiffs allege State and the U.S. Embassy in Cairo (where the applications were submitted) are unlawfully delaying adjudication of their K-1 visa applications. Specifically, they allege two Administrative Procedure Act ("APA") violations. First, that Defendants' delay in processing and adjudicating their visas constitutes "unreasonable delay" in violation of 5 U.S.C. § 706(1). Compl., Claims for Relief ¶¶ 1–9. Second, that the Regional Proclamations, which suspended "entry" of certain persons into the country, and Defendants' suspension and "phased resumption" of visa processing were arbitrary and capricious in violation of 5 U.S.C. § 706(2). *Id.* ¶¶ 10–19. Plaintiffs also seek a writ of mandamus compelling the State Department to adjudicate their K visas. *Id.* ¶¶ 20–24.

Defendants contend that since Plaintiffs filed their Complaint, consular offices have adjudicated eleven of Plaintiffs' applications, and that the court should dismiss those Plaintiffs' claims as moot. Defs. Mot., Ex. 3, Decl. of Courtney Paterson, ("Paterson Decl."). Regarding the other eight Plaintiffs, Defendants argue that any delay has not been "unreasonable" given the "extraordinary challenges" the COVID-19 pandemic presented for consular offices around the world, including infected staff and mandatory quarantines, and that the Department has strived to balance the need to protect overseas employees and the public "while maintaining critical services." Defs. Mot. at 3–4. Defendants also argue that Plaintiffs lack standing to challenge the Regional Proclamations and that Plaintiffs' challenge to the temporary suspension and "phased

resumption" approach to visa processing are moot because those policies are no longer in effect. *Id.* at 14–17.

## II.  LEGAL STANDARD

### A. Rule 12(b)(1)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) "presents a threshold challenge to the court's jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). The "core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The plaintiff bears the burden of showing "(1) [she] has suffered a concrete and particularized injury (2) that is fairly traceable to the challenged action of the defendant and (3) that is likely to be redressed by a favorable decision." *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 376–77 (D.C. Cir. 2017) (cleaned up).

A "court may appropriately dispose of a case under 12(b)(1) on mootness grounds." *Mykonos v. United States*, 59 F.Supp.3d 100, 103–04 (D.D.C. 2014) (citing *Comm. in Solidarity with the People of El Sal. v. Sessions*, 929 F.2d 742, 744 (D.C. Cir. 1991)). Article III of the Constitution grants federal courts jurisdiction to adjudicate "Cases" or "Controversies." U.S. Const. art. III, § 2. This case or controversy requirement extends only to "actual, ongoing controversies," *Honig v. Doe*, 484 U.S. 305, 317 (1988), and precludes courts from deciding moot cases, *Larsen v. U.S. Navy*, 525 F.3d 1, 3 (D.C. Cir. 2008). A case is "moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Munsell v. Dep't of Agriculture*, 509 F.3d 572, 581 (D.C. Cir. 2007) (quoting *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). In a case where "events outrun the controversy such that the court can grant no meaningful relief, the case must be dismissed as moot."

*McBryde v. Comm. to Review*, 264 F.3d 52, 55 (D.C. Cir. 2001) (citing *Church of Scientology of California v. United States*, 506 U.S. 9, 12 (1992)).

### B. Rule 12(b)(6)

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim tests the legal sufficiency of a complaint. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when the factual content allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court can consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

### III. ANALYSIS

### A. Adjudicated Visa Applications

Defendants contend they have adjudicated eleven Plaintiffs' visa applications, and that consequently, those Plaintiffs' claims are now moot. *See* Defs. Mot. at 14; Ex. 1 (listing Plaintiffs' applicant statuses as of June 14, 2021, with dates of adjudication for eleven out of nineteen Plaintiffs). The court agrees. Defendants are no longer "delaying" adjudication of those eleven Plaintiffs' visa applications, such that there is no longer a "live" dispute. *See Sayad v. DHS*, No. 20-CV-2333 (TSC), 2022 WL 4130840, at *2 (D.D.C. Sept. 12, 2022) (dismissing unreasonable delay claim as moot because plaintiff's application was adjudicated); *Penn v. Blinken*, No. CV 21-1055 (TJK), 2022 WL 910525, at *3 (D.D.C. Mar. 29, 2022) (same);

*Dvorak v. DHS*, No. 18-cv-1941 (DLF), 2019 WL 1491743 (D.D.C. Apr. 3, 2019) (same). Accordingly, the court will dismiss those Plaintiffs' claims as moot.

### B. Unreasonable Delay Claims

The APA requires that "within a reasonable time, each agency shall proceed to conclude a matter presented to it" and permits a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §§ 555(b), 706(1). A court evaluating a claim of unreasonable delay must "consider whether the agency's failure to respond is 'so egregious' as to warrant relief." *Tate v. Pompeo*, 513 F. Supp. 3d 132, 147 (D.D.C. 2021) (quoting *Telecomms. Rsch. & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 79 (D.C. Cir. 1984)).

In determining whether agency action has been unreasonably delayed, the D.C. Circuit analyzes six factors from *TRAC*:

(1) the time agencies take to make decisions must be governed by a "rule of reason";

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

*TRAC*, 750 F.2d at 80 (citations omitted).

1. <u>Factors One and Two</u>

The first *TRAC* factor is the "most important" and "carries the most weight." *See In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008); *Mahmood v. U.S. Dep't of Homeland Sec.*, No. CV 21-1262 (RC), 2021 WL 5998385, at *7 (D.D.C. Dec. 20, 2021) (citation omitted). The second *TRAC* factor "provides that the content of such a rule [of reason] may be found in a 'timetable or other indication . . . in the enabling statute.'" *Ctr. for Sci. in the Pub. Int. v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014) (quoting *TRAC*, 750 F.2d at 80). The first two factors are "typically consider[ed]" together because they both analyze whether there is "sufficient 'rhyme [and] reason'" in explaining the agency response time. *Dastagir v. Blinken*, No. 1:20-CV-02286 (TNM), 2021 WL 2894645, at *3–4 (D.D.C. July 9, 2021) (quoting *Ctr. for Sci. in the Pub. Int.*, 74 F. Supp. 3d at 300).

Regarding the first two factors, Congress has not provided a statutory or regulatory timeframe in which to adjudicate visa applications, instead giving agencies "wide discretion in the area of immigration processing." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017) (citations omitted). "Absent a congressionally supplied yardstick, courts typically turn to case law as a guide." *Sarlak v. Pompeo*, No. CV 20-35 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020) (citation omitted). While Plaintiffs do not allege how long their applications have been pending, *see generally Compl.*, Defendants' evidence shows that all Plaintiffs have been waiting between one-and-a-half and three-and-a-half years.

Given the "significant national security interests involved in assessing waiver applications and the compelling governmental interest in allowing the agency to balance its competing priorities as it sees fit," the alleged delay is not unreasonable. *See Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020) (holding a two-year delay in adjudicating visa waiver

eligibility is not unreasonable); *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 96 (D.D.C. 2020) (same but twenty-five-month delay); *Skalka*, 246 F. Supp. 3d at 153–54 (stating that a two-year processing delay "does not typically require judicial intervention"); *Ghadami v. U.S. Dep't of Homeland Sec.*, No. CV 19-00397 (ABJ), 2020 WL 1308376, at *8 (D.D.C. Mar. 19, 2020) (finding that "it would be out of step with the weight of decisions across the country if it drew the line for APA purposes at twenty-five months"). As a starting point, this case law tilts in Defendants' favor.

However, "[w]hether a 'rule of reason' exists for agency action 'cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Tate*, 513 F. Supp. 3d at 148 (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003)). Here, Plaintiffs' factual allegations regarding the State Department's processing of their applications do not establish a "transparent violation[ ] of a clear duty to act[,]" *In re Bluewater Network*, 234 F.3d 1305, 1315 (D.C. Cir. 2000), or delay "so egregious as to warrant mandamus[,]" *Core Commc'ns, Inc.*, 531 F.3d at 855. Moreover, the reasonableness of any delay is further supported by the impact of the COVID-19 pandemic, which forced embassies and consulates to operate at reduced capacity to ensure the safety of U.S. officials. Defs.' Mot. at 3–10. As such, the first and second *TRAC* factors weigh in Defendants' favor. *See Ctr. for Sci. in the Pub. Interest*, 74 F. Supp. 3d at 300 (finding that the first two *TRAC* factors weighed in the defendants' favor where the challenged processing timeline was subject to an "identifiable rationale").

2. Factors Three and Five

The third and fifth *TRAC* factors—whether health and welfare are at stake and the nature of the interests prejudiced by the delay—are typically analyzed together and weigh in Plaintiffs' favor. Plaintiffs allege that they have endured "numerous emotional and financial harms," including "debilitating depression and anxiety so severe their job performance, daily functioning, and overall health and well-being are compromised." Compl. ¶ 57. They also allege that for those Plaintiffs "who are approaching advanced maternal age, the window for them to be able to have children together is shrinking each day they are apart." *Id.*

Defendants recognize the processing delay has "impacted Plaintiffs' lives," but argue that visa application processing and adjudication has generally been delayed to "prevent the spread of COVID-19 and protect the safety of U.S. officials." Defs. Mot. at 26–27. Defendants do not specifically explain how State Department policies regarding COVID-19 safety have impacted conditions at the U.S. Embassy in Cairo such that it would have been unable to process and adjudicate Plaintiffs' requests. When weighing Defendants' concerns—made only in the abstract—against Plaintiffs' alleged harms, which this court must accept as true, the court finds that factors three and five weigh in Plaintiffs' favor.

3. Factor Four

The fourth *TRAC* factor considers the effect that expediting action on Plaintiffs' visa applications would have on other agency activities of higher or competing priority. Defendants argue that requiring immediate adjudication of the Plaintiffs' visas would "simply 'reorder' a queue of applicants seeking adjudication," such that this factor counsels against a finding of unreasonable delay. *Id.* at 22 (quoting *Tate*, 513 F. Supp. 3d at 149) (citation omitted). The court agrees.

A "judicial order putting [Plaintiffs] at the head of the queue simply moves all others back one space and produces no net gain." *In re Barr Labs*, 930 F.2d 72, 75 (D.C. Cir. 1991). "While the effect of an individual case would be minimal, an accumulation of such individual cases being pushed by judicial fiat to the front of the line would erode the ability of agencies to determine their priorities." *Tate*, 513 F. Supp. 3d at 150.  Filing a federal lawsuit alone "should not give . . . any advantage." *Gong v. Duke*, 282 F. Supp. 3d 566, 569 (E.D.N.Y. 2017). Consequently, this factor weighs in Defendants' favor.

    4. <u>Factor Six</u>

The sixth and final *TRAC* factor concerns whether there is impropriety behind the agency delay.  The court "need not find any impropriety . . . to hold that agency action is unreasonably delayed." *TRAC*, 750 F.2d at 80.

Plaintiffs have not alleged any impropriety, and a "mere . . . delay is insufficient to show impropriety." *See Chowdhury v. Blinken*, No. 1:21-CV-1205-RCL, 2022 WL 136795, at *5 (D.D.C. Jan. 14, 2022).  Defendants contend that the delay is the natural consequence of work limitations caused by the pandemic and that, contrary to Plaintiffs' allegations, it has sought to prioritize the processing of K visas.  Defs. Mot. at 29.  Because Plaintiffs have not alleged bad faith, and because Defendants offer reasonable explanations for their actions, the court finds that this factor weighs in Defendants' favor.

Ultimately, upon consideration of all the *TRAC* factors, the court finds that Plaintiffs have not alleged sufficient facts to show that Defendants unreasonably delayed agency action, and therefore will grants Defendants' motion to dismiss Plaintiffs' unreasonable delay claim.

C. **Arbitrary and Capricious Claims**

The arbitrary and capricious standard is "highly deferential" and "presumes agency action to be valid." *Am. Trucking Ass'ns, Inc. v Fed. Motor Carrier Safety Admin.*, 724 F.3d 243, 245 (D.C. Cir. 2013) (citation omitted). "An agency's action is arbitrary and capricious if it has entirely failed to consider an important aspect of the problem." *SecurityPoint Holdings, Inc. v. Transp. Sec. Admin*, 769 F.3d 1184, 1187 (D.C. Cir. 2014) (citation omitted). Under the APA, courts "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A).

Plaintiffs argue that Defendants have acted arbitrarily and capriciously by (1) implementing the Regional Proclamations, which suspended "entry" of certain persons into the country, and (2) implementing a suspension and "phased resumption" of visa processing.

First, Plaintiffs lack standing to challenge the Regional Proclamations. The Regional Proclamations restricted entry from certain regions based on COVID-19 infection rate, including China, Iran, the Schengen Area, the United Kingdom, Ireland, and Brazil. *See* Proclamation Nos. 9984, 9992, 9993, 9996, 10041. Plaintiffs do not allege that they live in any of these regions. Indeed, both Plaintiffs and the Department submit facts showing Plaintiffs' applications were submitted to the U.S. Embassy in Cairo, which, according to Department procedure, indicates that they reside there. *See* Compl. at 4; *Nonimmigrant Visa for a Fiancé(e) (K-1)*, U.S. Dep't of State, available at https://go.usa.gov/x6Xkb (last visited Sept. 29, 2022). Plaintiffs have not alleged any facts to show that the Proclamations had any impact on the adjudication rate at the Cairo embassy. Stated differently, Plaintiffs have not alleged any facts showing that their

alleged injuries are traceable to the Regional Proclamations, and consequently, the court will dismiss their arbitrary and capricious claims for a lack of standing.

Second, Plaintiffs' challenge to Defendants' suspension and "phased resumption" of K-1 visa processing is moot. "The determination whether sufficient effects [of the alleged violation] remain to justify decision often will turn on the availability of meaningful relief." 13C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Fed. Prac. & Proc., § 3533.3.1, at 104-05 (3d ed. 2008). On one hand, "a case is not moot if a court can provide an effective remedy." *Larsen*, 525 F.3d at 4. On the other hand, courts may not decide a controversy where post-filing events "make[ ] it impossible for the court to grant 'any effectual relief.'" *Church of Scientology of Cal.*, 506 U.S. at 12.

The remedy Plaintiffs seek for their arbitrary and capricious claims is an order directing the "Department of State to resume issuing and reissuing visas to Plaintiffs and resume adjudication of all K visa applicants in an expedited manner." Compl., Claims for Relief ¶ 19. The temporary suspension was in effect from March 2020 to July 2020, and the "phased resumption" policy was replaced with new guidance in November 2020. *See* 20 STATE 110220, Expanded Guidance on Prioritization for the Phased Resumption of Routine Visa Services (Nov. 12, 2020) ("[P]osts are no longer obligated to be in a specific . . . phase to adjudicate a particular visa class as described in prior guidance."). Plaintiffs do not dispute that the challenged policies are no longer in effect, or that Defendants have resumed processing of K-1 visas. Consequently, as to the suspension and "phased-resumption" guidance, the court cannot grant Plaintiffs their requested relief because they have already obtained it. In cases such as this one, where "events outrun the controversy such that the court can grant no meaningful relief, the case must be dismissed as moot." *McBryde*, 264 F.3d at 55.

D. **Mandamus Claim**

Mandamus relief is proper only if: "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." *Fornaro v. James*, 416 F.3d 63, 69 (D.C. Cir. 2005) (quoting *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002)). Plaintiffs' APA and mandamus claims are derived from the same theory—that Defendants have delayed the adjudication of Plaintiffs' visas. Accordingly, the same analysis applicable to Plaintiffs' APA claims is applicable to their mandamus claim. *See Tate*, 513 F. Supp. 3d at 148 n.7; *see also Skalka*, 246 F. Supp. 3d at 152 ("The standard by which a court reviews . . . agency inaction is the same under . . . the APA and the Mandamus Act."). Because Plaintiffs fail to establish a valid APA claim, their claim for writ of mandamus—premised on the same theories—also falls short of the 12(b)(6) bar.

IV.   CONCLUSION

For the reasons explained above, the court will GRANT Defendants' Motion to Dismiss, ECF No. 5.

Date:  September 30, 2022

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge